# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# CASE NO. 5:20-CV-00579-BO

| | |
|---|---|
| TACHO M. SANDOVAL,<br>an individual, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | )<br>) |
| JOHN DOE No. 1, a/k/a "Fullest_Disclosure",<br>an individual;<br>JOHN DOE No. 2, a/k/a "MoMoneyRules",<br>an individual; and<br>JOHN DOE No. 3, a/k/a "Cartman_3_16",<br>an individual, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Pursuant to Fed. R. Civ. Proc. 72(a), Local Civil Rule 72.4 and 7.2, Plaintiff **TACHO M. SANDOVAL** submits this Memorandum of Law in Response to John Doe No. 3 a/k/a Cartman_3_16's ("Cartman") Appeal of Magistrate Judge Number's Order Denying Motion to Quash Subpoena and Objection to Jurisdiction, ECF 35, and states as follows:

## I. NATURE OF THE CASE

Cartman is an anonymous internet poster who has repeatedly accused Sandoval of, among other things, having committed securities fraud by engaging in a "pump and dump" of publicly traded stock. Cartman is the moderator of an internet discussion board on the website Investorshub.com ("iHub"), who for years has published defamatory, racist, postings targeting Sandoval and his wife. As alleged in the Complaint, ECF 1, business partners of Sandoval actually initiated a legal action against him based upon nothing more than the baseless accusations made by

1

Cartman and certain other anonymous posters on iHub. While those postings fell outside the statute of limitations, more recent postings accusing Sandoval of securities fraud form the basis for his single count Complaint, filed on November 3, 2020, against Cartman and two other anonymous posters. Sandoval is a New York businessman and, on information and belief, John Doe No.1, a/k/a "Fullest_Disclosure," is a citizen of North Carolina. Complaint, ECF 1, ¶¶ 2, 6. Sandoval has been candid in conceding that despite extensive due diligence prior to filing his Complaint, he does not know with certainty where Cartman lives. As a consequence of his inability to uncover the identities of the three John Doe Defendants through his own investigation, Sandoval seeks to serve subpoenas on iHub to obtain that information and sought the Court's leave to do so.

## II. THE COURT'S ORDER DENYING CARTMAN'S MOTION TO QUASH

After filing his Complaint, Sandoval sought leave to subpoena iHub to learn the Defendants' identities. ECF 12. The Court granted leave but also allowed time for notice to the Defendants so that they could challenge the subpoenas before iHub revealed their identities. ECF 14. Cartman did move to quash, contending that the Court lacked subject matter jurisdiction and that Sandoval's subpoena to iHub violated Cartman's First Amendment right to anonymous speech. ECF 18, 20. Following briefing and argument, the Magistrate Judge denied Cartman's motion to quash in a well reasoned and extensively researched Order, finding that the Court had minimal diversity jurisdiction sufficient to permit Sandoval such pre-service discovery, and also finding that Cartman's limited right to anonymous free commercial speech was outweighed by Sandoval's valid claim for defamation. *Sandoval v. Does 1-3*, No. 5:20-CV-00579-BO, 2021 WL 5600622, at *1 (E.D.N.C. Nov. 30, 2021) (the "Order").

2

### III. SUMMARY OF OPPOSITION ON APPEAL

Pursuant to applicable law, the Magistrate Judge has allowed Cartman all the benefits of due process, *e.g.* an opportunity to object to Sandoval's service of a subpoena on iHub to discover Cartman's true identity, staying the Order denying Cartman's motion to quash pending appeal, limiting dissemination of Cartman's identity while Sandoval pursues his claims. *Id.* at *14. While Cartman attempts to portray the Order as "contrary to law," the Magistrate Judge went to significant effort to fully address both the jurisdictional challenge raised by Cartman and his First Amendment rights.

The Magistrate Judge's Order should be upheld because he was correct in holding that based upon the minimal diversity between Sandoval and at least one of the Doe Defendants, the Court has "the authority to allow discovery on jurisdictional issues, such as the citizenship of parties . . ." and if discovery proves necessary, the Court "has tools available to address the presence of non-diverse defendants." *Id.* at *2.

Cartman's claim that Doe Defendants are fatal to diversity jurisdiction fails to present a wholly accurate picture of the law. While some courts have adopted a draconian interpretation of 28 U.S.C. § 1332 (2011) (the "Diversity Statute") finding that the mere presence of a Doe Defendant destroys diversity jurisdiction, numerous other courts have reached the opposite result, concluding that the mere naming of one or more John Doe Defendants does not destroy diversity unless it is later learned that a Doe Defendant's domicile in fact prevents complete diversity.

### IV. STANDARD OF REVIEW

Upon timely objection by a party, the court will modify or set aside a Magistrate Judge's non-dispositive order only when it is "clearly erroneous" or "contrary to law." Fed.R.Civ.P. 72(a). *See*

*also* Local Civil Rule 72.4(a) ("A factual finding is clearly erroneous when [the court is] 'left with the definite and firm conviction that a mistake has been committed.'")

V. **ARGUMENT**

A. **The Magistrate Judge Reached the Correct Ruling.**

As to the split amongst federal courts, the better reasoned rulings are those having found that "the mere inclusion of John Doe defendants does not destroy complete diversity" until "it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity." *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009) ("the presence of pseudonymous defendants in this case does not destroy complete diversity"). *See also Brikman v. Hecht*, 19CV5143RPKCLP, 2021 WL 3741538, at *2 (E.D.N.Y. Aug. 24, 2021) (refusing to dismiss on jurisdictional grounds because the mere inclusion of John Doe defendants does not destroy complete diversity until it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity.") (citations omitted); *Taylor v. Doe*, 1:20-CV-03398-MKV, 2021 WL 2940919, at *1 (S.D.N.Y. July 12, 2021) ("if Defendant turns out to be nondiverse, the Court will dismiss the case for lack of subject matter jurisdiction"); *Grice v. McMurdy*, No. 18-CV-6414, 2020 WL 90770, at *1 n.1 (W.D.N.Y. Jan. 8, 2020) ("inclusion of John Doe defendants is not an automatic bar to establishing subject matter jurisdiction pursuant to § 1332"); *Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-0485, 2014 WL 470883, at *6 n.3 (S.D.N.Y. Feb. 6, 2014) (citizenship of unidentified defendants is irrelevant for purposes of diversity jurisdiction, so long as the defendants remain unidentified); *Johnson v. Rite Aid*, 2011 WL 2580375 (D. N.J. June 28, 2011) ("merely including the fictitious Defendants will not defeat diversity jurisdiction at this time. Plaintiff should be aware, however, that she 'runs of the risk of having the case dismissed entirely

should an indispensable party, who is not diverse, later surface.'"); *Marcelo v. EMC Mortg. Corp.*, No. 10 Civ. 5964, 2011 WL 1792671, at *2 n. 3 (E.D.N.Y. May 6, 2011); *Zaccaro v. Shah*, 746 F.Supp.2d 508, 516 (S.D.N.Y. 2010)("the mere inclusion of John Doe defendants does not destroy complete diversity until it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity"); *Merrill Lynch Bus. Fin. Serv. Inc. v. Heritage Packaging Corp.*, No. 06-CV-3951, 2007 WL 2815741, at *3 (E.D.N.Y. Sept. 25, 2007) ("[A] plaintiff filing a federal action including Doe defendants 'does so at his peril,' because if a key party turns out to be nondiverse, the action will be dismissed for lack of jurisdiction."); *Macheras v. Center Art Galleries-Hawaii, Inc.*, 776 F.Supp. 1436, 1440 (D.Haw. 1991).

Based upon guidance from the Supreme Court, these courts adopt and recognize that courts may cure a jurisdictional defect by dismissing a non-diverse party. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004); *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826 (1989) (authorizing courts to restore complete diversity, even when the case is on appeal and diversity was incomplete in the district court). Indeed, as discussed below, Congress's revision of the 28 U.S.C. Section 1441 (the "Removal Statute"), to specifically instruct Court's to disregard the presence of fictitious defendants when considering diversity at the removal stage, is premised precisely upon the fact that if, after removal, it should be determined that the fictitious "Doe" defendant was not diverse from the Plaintiff, then the jurisdictional defect may be cured by dismissal of the defendant or dismissal of the case. Far from being an affront to principles of diversity jurisdiction, the "wait and see" approach is the only one that is actually *consistent* with Congress's expressed intent that Doe Defendants stand as no barrier to removal pursuant to federal court's diversity jurisdiction.

5

The "wait and see" approach, adopted by Judge Numbers and numerous federal courts before him, also better accommodates the evolving and still escalating proliferation of tortious speech published anonymously on the internet. Cartman's leading case is from 1997 and dealt with a television appearance, *Howell by Goerdt v. Trib. Ent. Co.*, 106 F.3d 215, 218 (7th Cir. 1997) (noting Plaintiff had "no excuse" for "not knowing the defendant's name"), whereas *Doe v. Ciolli*, specifically considered jurisdiction in the context of anonymous internet posters like Cartman, *Doe*, 611 F. Supp. 2d at 220 ("...where the plaintiffs were allegedly harmed by anonymous [internet posting] defendants through no action of their own, they should not suffer from the defendants' 'Doe' status").

> **B.  This Court Should Recognize An "Anonymous Internet Poster" Quasi-Exception to the Complete Diversity Rule Akin to the 'Fugitive Defendant' Exception**

In *Howell*, Judge Posner specifically noted of the complete diversity requirement: To this as to most legal generalizations there are exceptions. *Howell*, 106 F.3d at 218. Under the 'Fugitive Defendant' exception to the complete diversity rule, a Plaintiff may proceed under the federal court's diversity jurisdiction against a "fugitive defendant" notwithstanding the fact that the fugitive's residency and citizenship – by definition – is unknown. *Id.*

In *Lloyd v. Loeffler*, 694 F.2d 489, 490 (7th Cir. 1982), the Plaintiff brought suit, pursuant to the Court's diversity jurisdiction, against a couple whom had abducted the Plaintiff's child. Although the Plaintiff, a citizen of Virginia, had received some mail from the Defendants postmarked from Milwaukee, the Defendants' present location and citizenship was unknown at the time the suit was filed, despite Plaintiff having spent thousands of dollars on private detectives. *Id.* Writing for a unanimous panel, Judge Posner reasoned that:

6

> It seems absurd to hold that since a fugitive might be domiciled anywhere or maybe even nowhere, the act of becoming a fugitive puts a person beyond the jurisdiction of the federal courts. Probably the last domicile of the fugitive before he fled should be his domicile for diversity purposes. That would be Maryland in this case, and would not destroy diversity. This is a simple rule, and avoids rewarding the fugitive for his elusiveness. But in any event the probability that the McMahans were citizens of Virginia when this suit was filed is too slight to make us worry that there may not in fact be complete diversity.
>
> *Lloyd*, 694 F.2d at 490 (internal citations omitted)

Thus, in order to avoid "rewarding the fugitive for his elusiveness," the Court created an exception, finding complete diversity to exist, notwithstanding the fact that the "fugitive might be domiciled anywhere or maybe even nowhere." *Id.* Indeed, the Court's elegant and equitable approach looked to the facts and equities as alleged in the Complaint and permitted a finding of complete diversity based upon the fiction that the "fugitive defendant" who by definition had fled Maryland and whose actual citizenship was unknown at the time the suit was filed, *should not profit*, *i.e.*, should not be rewarded, for his "elusiveness." *Id. See also Riggsbee v. FedEx Ground Package Sys., Inc.*, 1:07CV201, 2008 WL 11493277, at *3 (M.D.N.C. Aug. 27, 2008) ("the 'fugitive' rule was necessary only because the domicile of the fugitive was unknown, and because the slight probability that the fugitive could be living in the same state as a plaintiff was not a sufficient basis to find that complete diversity had been destroyed.") Precisely the same factors and considerations call for this Court to recognize and apply a modified version of the 'Fugitive Defendant' exception in this case.

First, the Plaintiff in *Lloyd,* like Sandoval, was able to demonstrate a *prima facie* case of the Defendant's wrongdoing. The *Lloyd* Plaintiff had already obtained a contempt judgment and arrest warrants and in fact, had obtained a judgment against the Defendants in his favor. Here, the Magistrate Judge has already ruled that Sandoval has established a *prima facie* case of *defamation*

7

*per se* against Cartman. This prong balances and protects the anonymous posters' First Amendment and due process Constitutional rights.

Secondly, both here, as in *Lloyd*, the Defendant whose citizenship is unknown, is *directly responsible* for the Plaintiff's inability to locate them, and is *actively relying upon* Plaintiff's inability to locate them in furtherance of the very wrongdoing upon which the suit at issue is based. This prong equitably avoids rewarding the anonymous poster for their self-engineered "elusiveness." *Lloyd*, 694 F.2d at 490.

Finally, here, as in *Lloyd*, the slight probability that the Defendant is a citizen of the same state as the Plaintiff is simply not a sufficient basis to find that complete diversity has been destroyed. Indeed, the present record is devoid of evidence suggesting that Cartman is in fact a citizen of the State of New York, like Sandoval, and most noticeably perhaps, despite Cartman having represented that he is **not** a citizen of the State of North Carolina, Cartman has **not** represented that he is a citizen of the State of New York. ECF 20 at 10. This prong is harmonious and consistent with the Diversity Statute because it recognizes that absent evidence to the contrary – which the fugitive anonymous poster remains free to put forth at any time – the slight possibility that the fugitive anonymous poster *could be* of the same citizenship as the Plaintiff, should not destroy complete diversity.

For all intents and purposes, Cartman is an active fugitive. He is anonymous by design; he is actively trading upon his anonymity in furtherance of the very wrongdoing about which Sandoval has brought suit, and he is actively relying upon his self-created anonymity to avoid federal jurisdiction and accountability for his misconduct. These circumstances warrant the recognition of and adoption of a quasi-exception to the complete diversity rule, just as the Court recognized in

8

*Lloyd*.

It is also worth emphasizing that the recognition of the urged exception makes sound judicial sense in light of the continuing explosion and proliferation of damaging and defamatory speech by anonymous internet posters.

### C. Inclusion of Doe Defendants Does Not Automatically Destroy Diversity Jurisdiction Under 28 U.S.C. § 1332.

When Congress in 1988 amended the Federal Removal Statute to expressly indicate that "[i]n determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded," Congress necessarily and by implication modified the Diversity Statute. This is the most reasonable construction of the two statutes because the Removal Statute, by its own express terms instructs *only* that "the citizenship of defendants sued under fictitious names shall be disregarded" at the time the Court is "determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a)." 28 U.S.C. § 1441. However, under federal law, the determination of whether a diversity action was properly removed to federal court is made by considering the citizenship of the parties at two (2) instances: both when the state case is removed **and** when the state case was first filed. *See Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (Removal Statute "requires that to support diversity jurisdiction in removed cases, diversity must have existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal.")

If Congress's amendment to the Removal Statute had no impact on the Diversity Statute, a case with Doe Defendants properly removed to federal court would, upon later challenge, be deemed to satisfy the complete diversity requirement at the time of removal – based upon the Congressional amendment – but the case could **not** be deemed to have satisfied the complete diversity requirement

9

at the time it was first filed against Doe Defendants in state court because again, the Removal Statute does not instruct Courts to disregard the presence of fictitious defendants *at the time the case was filed in state court*.

Since Congress could never be presumed to have modified the removal procedure to permit cases against Doe Defendants to be removed based upon diversity jurisdiction – only to have those very same cases almost immediately dismissed for want of jurisdiction – Congress *must* have intended those cases to remain in federal court pursuant to federal diversity jurisdiction, which means Congress must have intended, by implication, for its amendment to the Removal Statute to have a correlative modification of the Diversity Statute.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff Sandoval respectfully requests that the Court deny Cartman's Appeal, sustain the Magistrate Judge's findings, and adopt and enforce its report and recommendations.

Dated: January 14, 2022

Respectfully submitted,

*/s/ Terry A. C. Gray*
Carl F. Schoeppl, Esq.
Florida State Bar No. 818518
Terry A.C. Gray, Esq.
Florida State Bar No. 100732
**SCHOEPPL LAW, P.A.**
4651 North Federal Highway
Boca Raton, Florida 33431-5133
Telephone: (561) 394-8301
Facsimile: (561) 394-3121
Cell: (561) 573-2878
E-mail: carl@schoeppllaw.com
E-mail: terry@schoeppllaw.com

*Special Appearance Counsel pursuant to Local Civil Rule 83.1(e) for Plaintiff Tacho M. Sandoval*

/s/ Joseph H. Nanney
Joseph H. Nanney
NC State Bar No. 18355
Robert A. Meynardie
NC State Bar No. 20566
**MEYNARDIE & NANNEY, PLLC**
5700 Six Forks Road, Suite 201
Raleigh, North Carolina 27609
Telephone: (919) 747-7373
Fax: (919) 324-6590
E-mail: bob@mnlaw-nc.com
E-mail: joe@mnlaw-nc.com

*Local Civil Rule 83.1(d) Counsel for
Plaintiff Tacho M. Sandoval*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that the foregoing Memorandum of Law complies with Local Rule 7.2(f)(3)(B) in that the applicable portions of the Memorandum of Law total 2794 words based upon the word count feature of undersigned counsel's document creation software.[1]

**/s/ Terry A. C. Gray**
Terry A. C. Gray, Esq.
*One of the Attorneys for Plaintiff Tacho M. Sandoval*

---

[1] Cartman did not include the Certificate of Compliance as required by the Local Rules.

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 14, 2022, I electronically filed Plaintiff's Motion for Leave to Conduct Early Discovery with the Clerk of Court using the CM/ECF system.

**/s/ Terry A. C. Gray**
Terry A. C. Gray, Esq.
*One of the Attorneys for Plaintiff Tacho M. Sandoval*

| Party | Method of Service | Name, Address, Telephone, and Facsimile of Party's Counsel |
|---|---|---|
| *John Doe No. 3, a/k/a "Cartman_3_16"* <br><br> *Defendants* | CM/ECF | William A. Robertson, Esq. <br> Eric M. David, Esq. <br> Brooks, Pierce, McLendon, Humphrey & Leonard, LLP <br> 1700 Wells Farog Capital Center <br> 150 Fayetteville Street <br> Raleigh, North Carolina 27601 <br> Telephone: (919) 839-0300 <br> Facsimile: (919) 829-0304 <br> Email: wrobertson@brookspierce.com <br> Email: edavid@brookspierce.com |

C:\Users\Terry Gray\Documents\Sandoval\Appeal\2022 01 14 Memorandum Response to Cartmans Appeal FINAL.wpd